Central States Against Transervice Logistics Can you hear me okay? Yes. Good morning and may it please the court. Brian Blacksmith on behalf of the Central States Pension Fund and its designated trustee. In these consolidated cases, the pension fund sued the employers to recover 12 months of unpaid contributions pursuant to ERISA Section 515. We are asking the court to apply a de novo review and reverse the judgments below where the cases were decided on a motion to dismiss. The reason that one year of contributions are in dispute is because this case depends on whether an evergreen clause in the employer's CBAs ever became effective. Similar to the agreements in the Wood County case, the CBAs here stated that the evergreen clause wouldn't take effect unless either the employer or the union served a timely termination notice. The employers here did not serve any notice themselves, and so their termination defense hinges on a set of letters that the union sent them on November 6, 2018. Mr. Blacksmith, getting to that point, would any synonym for the term terminate satisfy the fund that the letter, in fact, was noticed? We think to satisfy this clear and unequivocal standard, there needs to be evidence that the union wanted to end the deal now, similar to what the court said in the Wood County case. So they used the word expire, and they used the word expiration. Is there a certain term, either terminate or synonym for terminate, that you think the letter should have included? Well, they could have used a lot of different synonyms, terminate, cancel. I think the key point is, although they did include the expiration date, which came directly from the CBAs, they didn't tie that to their intentions in any way. I thought the problem, in essence, is that in this area of the law, and including Section 158 of Title 29, expiration is not a synonym for termination. That's exactly right, Your Honor. Congress clearly distinguished between expiration and termination in the labor law context. So we can look at Section 158. We can look at cases that this court has decided, such as Wood County or the Gustafson case. In those cases, there's a clear difference between expiration and termination. So the reference to expiration in the union's November 6th letters is really meaningless unless there's something more to tie it to the union's intentions. So, for example, in the Rutherford case, that was a situation where a party says they didn't want to continue the CBA beyond expiration. And that's clear, but that's not what the union said here. If we have to make any assumption or leap in logic about why the union referenced the expiration date, then at the very least, it was improper to decide these cases at the motion to dismiss stage. So let's talk about what the union actually did say about their desire. They said that they desired to meet with the employers at an early date for negotiations. That was the only expressed language in their letter about their intentions. It does not say anything about the old contract ending as of any particular date. As Judge Brendan sort of referenced, there wasn't a reference to the word terminate or cancel or conclude or anything of that nature. The union said it wanted to start talking and to meet with the employers. Can I ask you? I think I understand the legal argument here. At the same time, the employers are saying, look, we've paid, we already paid $11 million or thereabouts for these same employees for those same 12 months. We shouldn't have to pay twice. And my question is, in this kind of situation where there's a new contract, a renewal, maybe a change to different benefit providers or different benefit plans, is it customary for there to be indemnification agreements such that, for example, to protect an employer from double payment? Judge Hamilton, I don't know if there were indemnification agreements on the employer side in this case. Have you seen that more generally in this area of the law? Not with respect to this type of issue. Certainly, there's been situations where there may be an indemnification of withdrawal liability if there's a sale of assets or something. Can I make sure that I understand your legal argument here, though? I think I do, but I want to double check it. As I understand it, you read the November 6 letters as saying, OK, the contracts are expiring. We want to negotiate and nothing more. Right? So we're not saying terminate, but if it is under your theory of law, if the employers and the unions then reach the expiration date without a new agreement in place, then there's automatic renewal for a year. And then if the next month, let's say in March of that year, they had reached a deal for a new contract, you would say they could change everything except the renewal of the payment obligations to the funds. That is the third party beneficiaries. Is that right? That's right, because the employer and the union have agreed to be bound by the trust agreement, which requires payment through the U.S. With regard to the other alternative, which is suppose no new deal is reached by the employers and the unions in the wake of these November 6 letters. The contract would then expire. Many of its terms under Katz and its progeny would, in essence, roll over as long as the parties continue to abide by it. But the arbitration and no strike, no lockout terms would expire. And the employers would have, for example, have been able to lock out the employees on March 2nd if they wanted to. That's only if a termination occurred. And it's not our position that there was no termination notice. So we actually, the real date we have to look at here is 60 days prior to January 31st. So that's going to be December 2nd, 2018. Sorry, I didn't make my question specific. You're right. I didn't make that as clear as I should. But you're saying if this is treated as a termination notice, then on March 2nd, if there's no deal, there could have been a lockout, right? There could have been. That's not something that the union's letter was inviting. Right. That's a big risk that the union would take if they were to terminate the CBAs and go beyond January 31st without a new deal. And if we were to interpret just a reminder of expiration and an invitation to negotiate as a termination notice. I'm sorry. And that's a risk that we would be imposing on a union if we were to treat notice or a reminder about expiration and notice of a desire to negotiate as a notice of termination that canceled the Evergreen Clause.  I see I'm passing my time, so if there are no further questions at this time, I'll reserve the remainder of my time. That's fine. Thank you, Mr. Keneally. Thank you, Your Honor, and may it please the court. My name is Michael Keneally, and I represent the employers in these appeals. The district court correctly held that the union's letters were unequivocal timely notice of the union's intent to terminate the 2013 CBAs. That's clear from the face of the letters themselves. In them, the union essentially said our current agreement is expiring now. We'd like a new one. That's not the statement of someone who wants the current agreement to continue. So it's not surprising that both the union. To what extent does your argument rely on treating expiration as a synonym for termination in this area of the law? I think expiration is one piece of it, Your Honor, but I would say that there are actually a collection of facts that show that the letters are intended to terminate. So let me just focus first on expiration, since Your Honor asked my my colleague as well about that. I don't think there's any support for the funds position that expire is is somehow antithetical to termination. And Your Honor mentioned 158 of the NLRA. 158 D4 discusses when the the party to the collective bargaining agreement can engage in sort of economic self-help by either striking or locking out the other party. And in that provision, the NLRA actually describes the ending of the of the collective bargaining agreement as the expiration of it. So I think the expiration has to be at a minimum a species of termination. If an agreement is expiring, it can't be continuing. Well, I don't think there's a lot of case law in this area. And the best you've come up with on this is, is that NLRA, sorry, NLRB decision in the ESO, the New Jersey ESO case, which dealt with a very different kind of evergreen clause where a desire to amend was treated as sufficient. The so what else have you got that shows that this notice should have been treated as a notice of termination and a willingness to give up the no strike, no lockout and arbitration in the event there was no new agreement? Well, Your Honor, first of all, I just want to note that we have identified NLRA case laws. They haven't identified a case law to the contrary that says that expiration is not termination. There's nothing that says that they've been most cited the Seventh Circuit's decision in Gustafson, which just mentions in passing how the evergreen clause was written in that case. So there's nothing on the other side of the balance here. I do think the New Jersey ESO Employees Association case is squarely on point. I don't recall there being a difference in the way that that evergreen clause was written. But if Your Honor says so, I will I will take that as a given. I also would point to the Oakland press case, which is another NLRB decision that we cited, which refers to the use of the phrase expires on May 31st, 1976, which was the date specified as something. In New Jersey ESO, I've got it in front of me. The evergreen clause was less written notice of termination or desired modification is given by either party, etc. Well, I don't think expires means modification. I don't see how that would follow. Expires is the notice in ESO did indicate a desire to modify. We don't I don't think that was what the NLRB held in that case, even if that was the evergreen clause language. I think that they said that the they couldn't envision clearer notice of an intent to terminate. But again, there's nothing that the fund can point to that describes the opposite point of view, that expiration is not enough to convey notice to terminate. But I also wanted to not give up on the other elements of the letters here that show an agreement to end the bargain now, which I think Mr. Blechschmidt admitted was kind of the crux of the inquiry. So in addition to stating that the agreements expire on their stated date, the agreements also conveyed an intent to meet to negotiate a new contract, which is what this court identified in the Baker case as conveying notice to the agreement there. They also were sent in along the timetable for termination under the evergreen clause. There was no reason for the fund, I'm sorry, for the union to send these letters 86 days out from the expiration date if all they wanted to do was have a cup of coffee to discuss changes to the agreement more than a year down the road. And finally, the fourth point about these letters, which is significant, is the inclusion of the form F-7. And I think that this relates, Judge Hamilton, to the question you were asking Mr. Blechschmidt about the potential risk to the union if conveying this sort of notice through these letters in the form is enough to terminate. I don't think there is a real risk to the union here. And I think that that's why the union acted in the way it did. The form F-7 is highly significant because going back to Section 150 AD, which we were discussing just a moment ago, it is a prerequisite sending this form to the Federal Mediation and Conciliation Service for the union to be able to engage in a strike or work stoppage to put economic pressure on the employer in negotiations. That's the main source of a union's bargaining leverage in negotiations is the ability to go out on strike. That would be unlawful under the contract if the contract's no strike provision continued for another year. And so the union wouldn't have that leverage. And it would also be unlawful if they didn't submit this form F-7 under the NLRA 158D provision. So in submitting this form, the union conveyed not only that it was serious about negotiating now, but that it was interested potentially in being able to engage in a strike. So the fund has specifically mentioned the risk of the employer engaging in a lockout. But the other side of that coin is the union engaging in a strike. And that was only possible if they terminated the agreement on January 31st, 2019. And as the initiating party, it's much more likely that that was what they had in mind than that they were worried about the employers all of a sudden coming in and trying to lock out employees. The other point, as Judge Hamilton, you noted, is that the CATS doctrine really gives a lot of protection to the union in these circumstances. Because even if the agreement terminates, there's no way for the employer to engage in unilateral reductions in the wages or benefits or conditions of employment until the parties have really exhausted the bargaining process, which can take a lot of time. This court mentioned in the Mickles Corporation case, which is another Section 515 case involving the fund here, the Central States Pension Fund, that it's common in labor law for collective bargaining agreements to terminate without a full-blown successor agreement already in place. So I don't think that there is any real risk to the union here or to unions more generally if this court construes the letters as termination notices. However, there is a significant... Like the cat telling the mice not to worry. No, Your Honor. I mean, this all takes place in a well-developed framework of labor law. And the union was the one that took the first initiative here in sending these letters and in appealing to the Federal Mediation and Conciliation Service, which is the prerequisite for being able to engage in a work stoppage as leveraged at the bargaining table. And I think that's why the NLRB decisions are all quoted in our brief, because they support us and not the union. We're not trying to reinvent this area of the law or saying anything particularly unusual to practicing labor lawyers. Your Honor mentioned, of course, that there's the $11 million at stake here. I don't think that I'm not aware of any recourse we would have against the union for that money. Maybe there would be some sort of grievance process under the new agreement, but I'm not aware of any protection. And so we're really at the mercy of this court's interpretation of letters we did not draft. Mr. Connealy, but you chose to rely upon. Could you address the Sixth Circuit's opinion in Orend in particular? There are several cases that seem to endorse the fund's approach to this question of termination and expiration and notice. But Orend seems to me to be most recently, most closely on point. I don't think the Orend case is on point, Your Honor. The union's letter there expressed a desire to modify, amend and or negotiate a new contract. And Sixth Circuit precedent had drawn a firm distinction between notices to modify and notices to terminate and said that a notice to modify is not sufficient notice to terminate. So I think that that was the key factor there. It's also significant in that case that the employer ignored the union's letter. It didn't treat the letter as a notice to terminate. Here, of course, both of the parties were on the same page. And as you say, the employers did detrimentally rely on the union's conveyance of this letter and message that it wanted to end the agreement. I didn't say that. You can say they detrimentally relied on it. But this is these are sophisticated parties playing games with sophisticated and intentional ambiguity, it seems to me. I don't think that's true. There was nothing for us to gain from from relying on the notice of termination as a notice of termination. I see that I'm over my time unless the court has other questions. We would ask that the district court's judgment be affirmed. Thank you, Mr. Bushman. Thank you, Your Honor. Just a few quick points. The employers and the district court put a lot of significance on the form of seven. But that form, it's a bargaining notice. And notably, there was a similar form in the Wood County case. It didn't make a difference. We think that form is really immaterial here. And furthermore, the form itself does not distinguish between whether a termination notice or modification notice has been served. Secondly, the employers have stressed several board decisions in support of their arguments. Those are not precedential. And I'll just refer the court to the Martin v. Garman construction case, because I think that's important because it shows that even a defense in a board case is not going to win the day in a risk section 515 case. The employer may still be liable under a risk to a plan, even if it had a valid defense on labor law grounds in a board decision. And third, there's a lot of reliance on the use of the words new contract in the letters. That's not dispositive either. In Wood County, there was a reference to wanting a successor agreement, but that was not critical. There's other cases in our briefs cited where new contracts were desired. Mr. Blacksmith, we're in a position where obviously likely a published opinion is going to come out of this case. And funds, employers, unions are all going to be looking to the opinion for interpretation as to what is enough. It strikes me that your argument you've asserted that what terms here don't qualify as a termination. But I'm looking at, for example, your brief before the district court memorandum in response to the motion to dismiss. Page seven, you argue that 2013 CBAs do not require that the magic word terminate appear in the notice. There must nonetheless be unequivocal evidence of an intention to terminate. What is necessary in the letter to qualify for purposes of ending that agreement? So you're right that there doesn't need to be any magic word included, but the union or the employer, whoever's serving the notice, has to actively end the prior contract. So they have to use active language. It can't be passive. You can't assume that they said something that they didn't. I think the Rutherford case, again, is a good example of that, where the union actively sought to end the contract as of the expiration date. So there has to be a tie between what the intention is and wanting it to end on the expiration date. Because with the evergreen clause there, the presumption is that the parties want to rely on that and can extend the agreement while they're bargaining and working on a new agreement. Thank you. So we'll ask the court to reverse the judgments below. Thank you. Thank you very much. Our thanks to both counsel. The case is taken under advisement.